IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 26-cv-01133-PAB

EDISON BLADIMIR HIDALGO ANAZCO,

    Petitioner,

v.

JUAN BALTAZAR, Warden, GEO Group, Inc.,
GEORGE VALDEZ, Director of Denver Field Office, U.S. Immigration and Customs Enforcement,
TODD LYONS, Acting Director Immigration and Customs Enforcement,
MARKWAYNE MULLIN, Acting Secretary of the U.S. Department of Homeland Security, and
TODD BLANCHE, Acting Attorney General of the United States, [1]

    Respondents.

---

## ORDER

---

This matter comes before the Court on petitioner Edison Bladimir Hidalgo Anazco's Verified Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief [Docket No.1]. Respondents filed a response. Docket No. 6. Petitioner filed a reply. Docket No. 7.

## I.    BACKGROUND[2]

Petitioner is a citizen of Ecuador. Docket No. 1 at 5, ¶ 14. Petitioner is detained at the Denver Contract Detention Facility in Aurora, Colorado. Docket No. 6-1 at 5, ¶ 20. On May 18, 2024, petitioner entered the United States and was apprehended by

---

[1] Todd Blanche is substituted as a party for Pamela Bondi pursuant to Fed. R. Civ. P. 25(d).

[2] The following facts are undisputed unless otherwise stated.

United States Custom and Border Protection ("CBP").  Docket No. 1 at 6, ¶ 20.  CBP issued petitioner a Notice to Appear, initiating removal proceedings pursuant to 8 U.S.C. § 1229a with the Executive Office for Immigration Review ("EOIR").  Docket No. 6-1 at 3, ¶ 6.  The Notice charged petitioner with being inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(A)(i).  *Id.*  On May 19, 2024, petitioner was enrolled in the Alternative to Detention ("ATD") program and released.  *Id.*, ¶ 8.  Pursuant to the ATD program, petitioner was given an ankle monitor and required to use a biometric check-in application called SmartLink.  Docket No. 1 at 6, ¶ 21.  On May 19, 2025, petitioner filed an application for asylum.  *Id.* at 7, ¶ 29.  On November 18, 2025, petitioner was taken into custody by ICE and his participation in the ATD program was terminated.  *Id.* at 9-10, ¶¶ 40-41; Docket No. 6-1 at 4-5, ¶¶ 10-11.

On November 26, 2025, the Department of Homeland Security ("DHS") filed a motion to pretermit petitioner's asylum case, arguing that petitioner was eligible for asylum in Honduras under an Asylum Cooperative Agreement ("ACA") and was therefore ineligible for asylum in the United States.  Docket No. 1 at 10, ¶ 44; Docket No. 1-2 at 10-13.  On December 10, 2025, Immigration Judge Brea Burgie granted DHS's motion to pretermit during a hearing.  Docket No. 1 at 10, ¶ 45; Docket No. 1-2 at 27-28.  On January 13, 2026, Immigration Judge Melanie Corrin ordered petitioner's removal to Ecuador.  Docket No. 1 at 10, ¶ 46; Docket No. 1-2 at 29-30.  On February 11, 2026, petitioner appealed the order of removal to the Board of Immigration Appeals ("BIA"), which remains pending.  Docket No. 1 at 10, ¶ 47; Docket No. 1-2 at 31-33.

On March 19, 2026, petitioner filed his Petition for Writ of Habeas Corpus.  Docket No. 1.  Petitioner brings a claim alleging a violation of his Fifth Amendment right

2

to due process (Count One); violation of 8 U.S.C. § 1226(a) and 8 C.F.R. 236.1 (Count Two); violation of his right against unreasonable seizure (Count Three); and violation of the Administrative Procedure Act ("APA") (Count Four).  *See id.* at 13-14.  Petitioner requests, among other forms of relief, that the Court order respondents to release petitioner.  *See id.* at 15.

## II.    ANALYSIS

Before addressing petitioner's claims, the Court must determine whether petitioner's current detention is controlled by 8 U.S.C. §§ 1225 and 1226 or 8 U.S.C. § 1231.  While §§ 1225 and 1226 concern detention while removal proceedings are pending, the removal and detention period under 8 U.S.C. § 1231 "begins when an alien is 'ordered removed,' and the removal order becomes 'administratively final.'"  *See Johnson v. Guzman Chavez*, 594 U.S. 523, 534 (2021).  "A removal order becomes 'administratively final' when the order has been affirmed by the BIA or the time for seeking review has expired."  *Ndou* v. *Noem*, 2026 WL 686564, at *2 (D.N.M. Mar. 11, 2026) (citing 8 U.S.C. § 1101(a)(47)(B); *Riley v. Bondi*, 606 U.S. 259, 267 (2025)).  Because petitioner's appeal of the removal order remains pending, his removal order is not administratively final.  *See Singh v. Choate*, No. 19-cv-00909-KLM, 2019 WL 3943960, at *3 (D. Colo. Aug. 21, 2019) ("a removal order does not become administratively final until the BIA affirms the immigration judge's order").  Thus, petitioner's current detention is not controlled by 8 U.S.C. § 1231.  *See Chen v. Noem*, 2026 WL 425694, at *3 (C.D. Cal. Feb. 13, 2026) (where petitioner's appeal to the BIA remains pending, "it follows that Petitioner's current detention is governed by the pre-

3

removal-period detention statute, § 1226(a), rather than the post-removal-period detention statute, § 1231(a)").

The next issue is whether petitioner's detention is controlled by 8 U.S.C. §§ 1225 or 1226. The INA "contemplates two detention regimes for noncitizens pending removal proceedings," one controlled by § 1225 and one controlled by § 1226. *Hernandez v. Baltazar*, No. 25-cv-03094-CNS, 2025 WL 2996643, at *3 (D. Colo. Oct. 24, 2025) (citation omitted). Section 1225 mandates detention pending removal proceedings, providing that, "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained." 8 U.S.C. § 1225(b)(2)(A). Unless certain exceptions are present, as provided for in §§ 1225(b)(2)(B) and (C), § 1225 "mandates detention without the opportunity for a bond hearing for the noncitizens to whom it applies." *Hernandez*, 2025 WL 2996643, at *3. Section 1226, on the other hand, does not mandate detention, providing that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Under § 1226(a)(2), the Attorney General has the discretion to release a noncitizen on bond while removal proceedings are pending. 8 U.S.C. § 1226(a)(2). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018).

While respondents contend that petitioner is detained under § 1225, respondents provide no basis for this assertion. *See* Docket No. 6 at 3; Docket No. 6-1 at 5, ¶ 13. As the Court has found in several cases, § 1226, not § 1225, applies to the detention of noncitizens, like petitioner, who were detained while already residing in the United

4

States.  *See, e.g.*, *Moncada-Hernandez v. Trump*, No. 26-cv-00436-PAB, 2026 WL 472744, at *2-3 (D. Colo. Feb. 19, 2026); *De La Cruz v. Baltazar*, No. 26-cv-00360-PAB, 2026 WL 439217, at *2 (D. Colo. Feb. 16, 2026); *Gabriel-Morales v. Bondi*, No. 26-cv-00392-PAB, 2026 WL 415597, at *2 (D. Colo. Feb. 13, 2026).  The Court agrees with other courts in this district that have found a petitioner who is released, enrolled in an ATD program, and later re-detained is subject to detention under § 1226(a).  *See Ekenge v. Baltazar*, No. 26-cv-00630-SBP, 2026 WL 617341, at *2 & n.3 (D. Colo. Mar. 5, 2026) (concluding that petitioner was subject to detention under § 1226 and finding that there was no support for respondents' "bare statement" that § 1225 applies to petitioner's detention); *Singh v. Baltasar*, No. 26-cv-0611-WJM, 2026 WL 601950, at *2-3 (D. Colo. Mar. 4, 2026).

### A.  Count One – Fifth Amendment Due Process Claim

Petitioner argues that his "continued detention violates his right to substantive and procedural due process guaranteed by the Fifth Amendment to the U.S. Constitution."  Docket No. 1 at 13, ¶ 59.  He contends that his detention is "not reasonably related to a legitimate governmental objective, is arbitrary, and lacks adequate procedural safeguard" and has been unconstitutionally prolonged.  *See id.*, ¶¶ 60-61.  Petitioner argues that his "actual removal is also not likely in the reasonably foreseeable future since continued litigation of Petitioner's removal is likely to subject Petitioner to detention for well over another year" and because respondents "cannot lawfully remove petitioner to Ecuador."  *Id.*, ¶ 61.

While the Court has concluded that petitioner is detained pursuant to § 1226, and is therefore entitled to the procedures afforded under this statute, petitioner does not

explain what "procedural safeguards" respondents failed to provide in detaining petitioner.  *See id.* at 13, ¶ 59.  Petitioner offers no argument as to what process was due before he was terminated from the ATD program and re-detained or whether he is entitled to a bond hearing as a § 1226 detainee.[3]  When noncitizens who were released under the ATD program and later re-detained bring due process claims, courts have relied on the three-factor test in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  *See, e g., Ekenge*, 2026 WL 617341, at *4; *Sanchez Henao v. Hernandez*, 2026 WL 905035, at *5 (W.D. Wash. Apr. 2, 2026).  In applying *Mathews*, courts have found that petitioner's due process rights were violated and that the appropriate remedy was for petitioner to be provided a bond hearing.[4]  *See, e g.*, *Ekenge*, 2026 WL 617341, at *6;

---

[3] Petitioner argues that, "[p]ursuant to 8 C.F.R. § 236.1(c)(9), only certain officials may revoke the release or parole of a previously released noncitizen."  Docket No. 1 at 12, ¶ 55.  Plaintiff contends that there "is no indication that anyone other than a deportation officer reviewed the revocation of petitioner's ATD status."  *Id.*  In a declaration, ICE Deportation Officer John Mansur states that petitioner's participation in the ATD program was terminated by "ICE Deportation Officer Nicholas Zimmerman through verbal authorization from Supervisory Detention and Deportation Officer (SDDO) Rebecca Fisher."  Docket No. 6-1 at 5, ¶ 11.  Respondents submit an ICE memorandum entitled "Delegation of Authority" that states the authority to revoke Orders of Supervised Release is delegated to SDDOs.  *See* Docket No. 6-2 at 3.  Petitioner contends that there is no evidence indicating that petitioner was released on an Order of Supervised Release ("OSUP") and that "individuals released during removal proceedings are generally issued an I-220A Order for Release on Recognizance."  Docket No. 7 at 5.  However, petitioner provides no information as to whether petitioner was released on an OSUP or Order for Release on Recognizance ("OREC") and therefore fails to explain what process petitioner was due as a noncitizen released on an OSUP or OREC.

[4] Release, rather than a bond hearing, may be an appropriate remedy where "no evidence has been provided that the petitioner violated the conditions of his release pursuant to an [Order of Release on Recognizance] or similar status, where little or no evidence has been provided in support of respondents' claims as to what the petitioner's conditions of release are, or where there is some argument or indication that respondents' reference to such a violation may be pretextual."  *See Ekenge*, 2026 WL 617341, at *7.  Here, however, there is evidence petitioner did violate conditions imposed by the ATD program and petitioner does not argue that his detention for these

*Sanchez Henao*, 2026 WL 905035, at *7. However, because petitioner has not requested a bond hearing or discussed how his due process rights were violated under *Mathews*, the Court will not address this issue.

Rather, petitioner argues that the prolonged nature of his detention and the lack of a reasonable probability of his removal means that his due process rights have been violated. *See* Docket No. 1 at 13, ¶ 61. In *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001), the Supreme Court addressed the issue of when a noncitizen's detention under § 1231(a)(6) amounts to indefinite detention and thus violates the Fifth Amendment of the United States Constitution. *Zadvydas* held that a six-month period of post-removal detention is presumptively reasonable, but, "[a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* This standard does not require petitioner to "show the absence of *any* prospect of removal—no matter how unlikely or unforeseeable." *Id.* at 702. Rather, he simply must show that removal is not significantly likely in the reasonably foreseeable future. *Id.* at 701. Although *Zadvydas* concerned a noncitizen with a final order of removal who was therefore detained pursuant to § 1231, some courts have found that noncitizens, like petitioner, who are detained pursuant to § 1226(a) nevertheless have a right to be free from "indefinite detention" pursuant to *Zadvydas. See Chen*, 2026 WL 425694, at *5 ("Even if a removal order is not administratively final and does not fall under § 1231(a), detention under § 1226(a) clearly poses the same

_____

violations was pretextual. *See* Docket No. 6-1 at 4, ¶ 9. Moreover, as explained above, petitioner fails to explain how his due process rights were violated pursuant to *Mathews* to justify immediate release as a remedy.

constitutional concerns that the *Zadvydas* court contemplated.") (internal quotation and citation omitted); *but see Gomez v. United States Immigr. & Custom Enf't*, 2026 WL 63933, at *3 (D.N.M. Jan. 8, 2026) ("The due process analysis in *Zadvydas* applies to aliens with final orders of removal."); *Thiam v. Hildebrand*, 2026 WL 863834, at *4 (N.D. Ohio Mar. 30, 2026) ("*Zadvydas* does not apply before entry of a final order of removal").

Even if *Zadvydas* were directly applicable here, petitioner has failed to carry his burden to show that there is no significant likelihood of removal in the reasonably foreseeable future. Petitioner argues that the "continued litigation of Petitioner's removal is likely to subject Petitioner to detention for well over another year." Docket No. 1 at 13, ¶ 61. Petitioner's removal continues to be litigated due to petitioner's appeal of his removal order that is pending before the BIA. *See id.* at 10, ¶ 47; Docket No. 1-2 at 31-33. However, effectuation of a removal order being prolonged by petitioner's appeal does not mean his detention is not significantly likely as contemplated under *Zadvydas*. *See Soberanes v. Comfort,* 388 F.3d 1305, 1311 (10th Cir. 2004) (although petitioner's appeal of his detention order remained pending, his "detention is clearly neither indefinite nor potentially permanent like the detention held improper in *Zadvydas*; it is, rather, directly associated with a judicial review process that has a definite and evidently impending termination point"). Petitioner's argument that he cannot be lawfully removed to Ecuador also fails to carry his burden under *Zadvydas.* Petitioner contends that he cannot be removed to Ecuador – despite Judge Burgie's order granting DHS's motion to pretermit petitioner's application for asylum and Judge Corrin's order of petitioner's removal to Ecuador – because petitioner was not provided

a hearing on his asylum application.  *See* Docket No. 1 at 10, 11, ¶¶ 45, 46, 49.

Petitioner provides no authority for this argument.  Even accepting petitioner's argument

that the removal order is invalid and the BIA would therefore vacate the removal order,

this outcome is "directly associated with a judicial review process that has a definite and

evidently impending termination point."  *See Soberanes*, 388 F.3d at 1311; *see also*

*Thiam*, 2026 WL 863834, at *4 ("because [petitioner] has not shown that he won't be

removed if the Board denies his appeal, he has failed to carry his burden" under

*Zadvydas*).  Accordingly, the Court will deny petitioner's request for relief under Count

One.

### B.  Count Two – Violation of 8 U.S.C. § 1226(a) and 8 C.F.R. 236.1

In Count Two, petitioner argues that his "re-detention . . . despite his compliance

with ATD requirements is arbitrary and capricious and contrary to the Immigration and

Nationality Act."  Docket No. 1 at 14, ¶ 63.  As discussed regarding Count Two, the

Court rejects petitioner's *Zadvydas* challenge to his re-detention and petitioner has not

explained how his due process rights were violated pursuant to *Mathews.*  To the extent

that petitioner is challenging respondents' decision to terminate petitioner's participation

in the ATD program and re-detain petitioner, the Court lacks jurisdiction to consider this

argument.  *See Salvador F.-G. v. Noem*, 2025 WL 1669356, at *5 n.9 (N.D. Okla. June

12, 2025) ("to the extent petitioner's claims could be understood as challenging the

discretionary decisions made by DHS to revoke his bond and detain him without bond

given his specific circumstances, the Court finds that § 1252(a)(2)(B)(ii) and § 1226(e)

bar habeas review").  Accordingly, the Court will deny petitioner's request for relief

under Count Two.

### C.  Count Three – Unreasonable Seizure

In Count Three, petitioner argues that the "arbitrary re-detention of Petitioner violates his right against unreasonable seizure."  Docket No. 1 at 14, ¶ 66.  Petitioner does not cite legal authority for his argument and reincorporates those arguments made in connection to Counts One and Two.  For the reasons discussed above, the Court rejects petitioner's arguments.  Furthermore, petitioner's challenge to his prolonged detention is properly analyzed under the Fifth Amendment, not the Fourth Amendment. *See Rashid v. Trump*, 807 F. Supp. 3d 349, 373 (D. Vt. 2025) (petitioner's "right to be free from unreasonably prolonged detention cannot come from both the Due Process Clause and the Fourth Amendment").  Even if petitioner did properly bring a Fourth Amendment challenge, petitioner provides no authority for his argument that release is the proper remedy for a Fourth Amendment violation.  *See* Docket No. 1 at 14, 15. "[T]he remedy for a Fourth Amendment violation is the suppression of evidence that is the 'fruit' of an unreasonable seizure."  *Corregidor v. Bondi*, 2026 WL 636745, at *8 (D.N.M. Mar. 6, 2026) (finding that petitioner failed to demonstrate that his claims could only be remedied by release where petitioner "does not cite any authority to support that release is the appropriate remedy for an unreasonable seizure").

### D.  Count Four – Administrative Procedure Act

In Count Four, petitioner argues that respondents' "refusal to follow the regulations regarding revocation of release is in violation of federal regulations" and "departure from longstanding policy and practice after multiple decades is a violation of federal regulations."  Docket No. 1 at 14, ¶ 68.  Because an APA claim "does not provide an independent basis for relief," and the Court finds that petitioner has failed to

10

show his entitlement to relief on Counts One, Two, and Three, the Court will deny relief for petitioner under Claim Four. *See Valdovinos v. Noem,* 2026 WL 948285, at *9 (D.N.M. Apr. 8, 2026).

### III.    CONCLUSION

Therefore, it is

**ORDERED** that petitioner Edison Bladimir Hidalgo Anazco's Verified Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief [Docket No.1] is **DENIED without prejudice**.

DATED April 14, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge

11